## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                    )
**MATTHEW BOBOLA,**                 )
                                    )
        **Plaintiff,**              )
                                    )
        **v.**                      )         **Civil Action No.**
                                    )         **16-10664-FDS**
**F/V EXPECTATION; NORDIC**         )
**FISHERIES, INC.; KARL KAUGHMAN;** )
**LESTER FELTIS; and ROBERT STEWART,** )
                                    )
        **Defendants.**             )
_____)

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

        This action arises out of an injury suffered by a seaman aboard a vessel.  Plaintiff

Matthew Bobola has filed suit under the Jones Act and general maritime law against the vessel

F/V Expectation; the vessel's owner, Nordic Fisheries, Inc.; captain Karl Kaughman; first mate

Lester Feltis; and engineer Robert Stewart.  The complaint alleges that Bobola was injured while

working onboard the vessel due to defendants' negligence.  It also alleges that defendants

harassed him when he sought medical treatment.  The complaint asserts claims for (1) negligence

under 46 U.S.C. § 30103 and 46 U.S.C. § 30104 (the Jones Act), (2) intentional infliction of

emotional distress, (3) maintenance and cure, and (4) unseaworthiness.  Bobola is now

incarcerated and proceeding *pro se*.

        Defendants have moved to dismiss the complaint for insufficient service of process.

They have also moved to dismiss the claims against the individual defendants for failure to state

a claim upon which relief can be granted, and the claims against the vessel for failure to establish *in rem* jurisdiction.

For the following reasons, defendants' motion to dismiss will be granted in part and denied in part.

## I.     **Background**

Unless otherwise noted, the facts are set forth as alleged in the complaint.

### A.     **Factual Background**

The F/V Expectation is a fishing vessel that is owned by Nordic Fisheries, Inc., a company headquartered in New Bedford, Massachusetts. (Compl. ¶ 5). On October 10, 2013, Bobola was working aboard the vessel as a full-share deckhand. (*Id.* ¶ 10). While on deck, Bobola was "waiting for the starboard 'drag' to be set onto the deck," when a "swinging club stick smashed [his] elbow into the side of the cutting box." (*Id.* ¶¶ 11-12). The club hit him with such force that it ripped the sleeve off of his durable oil coat, deeply bruised his elbow, and caused swelling. (*Id.* ¶ 12). At the time of the incident, the ship was in gear, "steaming forward" at sea. (*Id.* ¶ 11).

After the incident, Bobola experienced "extreme pain." (*Id.* ¶ 13). He told another crew member that he thought he may need to return to port in order to receive medical treatment. (*Id.*). The crew member told him "[y]ou don't want to do that," and immediately told the vessel's first mate, Feltis, what Bobola had said. (Compl. Ex. A ¶ 3). According to the complaint, the next morning, Feltis approached Bobola and made a "veiled threat," warning him that "rough weather could result in a fall over the rail and being lost at sea," so Bobola should "watch what [he] say[s]." (Compl. ¶ 14). Feeling threatened, Bobola worked through the pain for the next four days. (*Id.* ¶ 15). During that time, the vessel's captain, Kaughman, insisted that

2

Bobola keep pace with the other crewmen.  (*Id.*).  When Bobola could not keep pace due to his injury, Kaughman made the rest of the crewmen work longer hours, which "result[ed] in crew animosity toward [Bobola]."  (*Id.*).

Five days after his injury, Bobola requested that the ship return to port.  (*Id.* ¶ 16). According to the complaint, in response, Kaughman and the vessel's engineer, Stewart, berated Bobola in front of the crew, calling him a "crybaby" for requesting medical care.  (*Id.*). Kaughman warned Bobola that he should leave quickly once they arrived at port, because the crew was angry and wanted "to kick [his] ass."  (Compl. Ex. A ¶ 7).  The complaint also alleges that Kaughman and Stewart "orchestrated the crew's animosity toward the plaintiff," and then stated that they "could not guarantee the plaintiff's safety from the irate crew."  (Compl. ¶ 17). The next day, October 16, 2013, the vessel arrived at port.  (Compl. Ex. A ¶ 9).

After arriving at port, Bobola left the ship immediately and went to a hospital where he was treated and received painkillers.  (Compl. ¶ 18).  While allegedly "doped up" on painkillers, Bobola went to Nordic Fisheries, where he discussed the incident with Marc Buron of Nordic. (*Id.*).  During their meeting, Buron asked Bobola what he thought should or should not have happened, and also asked him to sign something that he could not read or understand because he was "doped up."  (*Id.*; Compl. Ex. A ¶ 10).  Buron then paid Bobola a one-quarter share instead of a full share.  (Compl. ¶ 18).

Unrelated to this suit, Bobola was incarcerated in New Hampshire in early 2014.  (*Id.* ¶ 19).  The complaint alleges that he is "functionally illiterate" and has reduced cognitive abilities.  (*Id.* ¶ 20; Pl. Mem. ¶ 8).

**B.** **Procedural Background**

While incarcerated, Bobola filed the complaint in this action on July 24, 2015, in the

United States District Court for the District of New Hampshire.  On November 10, 2015, Magistrate Judge Johnstone ordered Bobola to file by December 11, 2015, either a notice of voluntary dismissal or a motion requesting that the court serve process on defendants.  On December 7, 2015, Bobola filed a motion requesting that the court serve defendants.  On January 20, 2016, the court sent Bobola five blank summons forms, directing him to complete and return them to the court within thirty days.  Bobola completed the summons forms, and defendants were finally served on February 5, 2016.  (Def. Mem. 5).

On November 9, 2015, Bobola moved to transfer venue to the District of Massachusetts. Defendants opposed the transfer, but the court granted the motion on April 4, 2016, after defendants were served.

## II.    Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301,

4

305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, while *pro se* complaints are accorded an "extra degree of solicitude", *Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir. 1991), they still must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1998).

## III.   Analysis

Defendants have moved to dismiss the complaint on three grounds. First, they contend that the complaint should be dismissed as to all defendants under Fed. R. Civ. P. 12(b)(5) because Bobola failed to complete service of process within 90 days after filing the complaint as required by Fed. R. Civ. P. 4(m). Second, they contend that the claims against the individual defendants should be dismissed under Fed. R. Civ. P. 12(b)(6) because negligence claims under the Jones Act can proceed against only a vessel's owner, in this case Nordic Fisheries. Third, they contend that the complaint should be dismissed as to the vessel because Bobola has failed to perfect an *in rem* claim against the F/V Expectation.

### A.   Insufficient Service of Process

A plaintiff must serve defendants with process within 90 days of filing a complaint. Fed. R. Civ. P. 4(m). If a plaintiff fails to serve process within that period, then a court "must dismiss

5

the action without prejudice against that defendant or order that service be made within a specified time." *Id.* If, however, "the plaintiff shows good cause for the failure, [a] court must extend the time for service for an appropriate period." *Id.*

Plaintiff here filed the complaint on July 24, 2015. On November 10, 2015, approximately 109 days after the complaint was filed, the District Court in New Hampshire informed plaintiff that he needed to request that the court serve defendants, or voluntarily dismiss the action, by December 11, 2015. Plaintiff requested that the court serve defendants before that deadline, and they were served on February 5, 2016, approximately 196 days after the complaint was filed. Because plaintiff failed to serve defendants within 90 days of July 24, 2015, he must show good cause for failing to complete service within the deadline.

When a plaintiff has failed to serve process, "the burden of demonstrating the requisite good cause rest[s] upon [him]." *United States v. Ayer*, 857 F.2d 881, 884-85 (1st Cir. 1988).

> [G]ood cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of a third person['s actions], typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstance, or the plaintiff is proceeding *pro se* or *in forma pauperis*. *Pro se* status or any of the other listed explanations for a failure to make timely service, however, is not automatically enough to constitute good cause for purposes of Rule 4(m).

*McIsaac v. Ford*, 193 F. Supp. 2d 382, 383 (D. Mass. 2002) (quoting Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1137 (3d ed. 2002)); *see Martello v. United States*, 133 F. Supp. 3d 338, 345 (D. Mass. 2015) (concluding that plaintiff failed to establish good cause because he was not proceeding *pro se* and did not show diligence in attempting to effect service; however, exercising discretion to grant extension because case would effectively be dismissed with prejudice due to running of statute of limitations).

Taken collectively, plaintiff's *pro se* status, incarceration, admittance to the Residential

Treatment Unit at the prison in December 2014, mistaken belief about when service must be effectuated, and limited cognitive abilities together establish good cause for missing the service deadline.  (Pl. Mem. ¶¶ 6-9).  Furthermore, it appears that plaintiff did not intentionally delay service.

Under the circumstances, plaintiff has demonstrated good cause for his failure to serve defendants before the 90-day deadline imposed by Fed. R. Civ. P. 4(m).  Accordingly, defendants' motion to dismiss the complaint for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5) will be denied.

### B. Failure to State a Claim

Defendants next contend that the complaint fails to state a claim against Kaughman, Feltis, and Stewart under the Jones Act because they were neither Bobola's employer nor the owner of the vessel.  It is not clear from the *pro se* complaint exactly which claims plaintiff asserts against which defendants.  Accordingly, the Court will construe the complaint liberally and address each claim as if it was asserted against each defendant.

### 1. Negligence

Liberally construed, the complaint asserts a negligence claim against all defendants under the Jones Act, 46 U.S.C. § 30104, and a separate claim for negligence against all defendants under 46 U.S.C. § 30103.  Defendants contend that the negligence claim under the Jones Act can be brought against only Nordic Fisheries, because the other defendants are not plaintiff's employer and did not own the vessel.  Defendants do not address plaintiff's claim under Section 30103.

The Jones Act allows a seaman who is injured in the course of his employment to bring a civil action for negligence against his employer.  46 U.S.C. § 30104.  "A plaintiff's burden of

proving causation under the Jones Act is 'featherweight.'  Liability exists if the employer's

negligence contributed even in the slightest to the plaintiff's injury." *Toucet v. Maritime*

*Overseas Corp.*, 991 F.2d 5, 10 (1st Cir. 1993) (citations omitted).  The complaint alleges that

while plaintiff was working aboard the F/V Expectation, Kaughman acted negligently by leaving

the boat in gear while loading the starboard "drag" onto the deck.  It further alleges that his

negligence caused plaintiff's injury.  Because Nordic Fisheries was plaintiff's employer, the

complaint's allegations are sufficient to state a claim for negligence under the Jones Act against

Nordic Fisheries.

Before evaluating whether the complaint states a claim for negligence against the

individual defendants, some context concerning the history of the Jones Act is warranted.  The

Jones Act was originally set forth in Section 33 of the Merchant Marine Act of 1920.  The

original text stated:

> Any seaman who shall suffer personal injury in the course of his employment
> may, at his election, maintain an action for damages at law, with the right of trial
> by jury, and in such action all statutes of the United States modifying or extending
> the common-law right or remedy in cases of personal injury to railway employees
> shall apply; and in case of the death of any seaman as a result of any such
> personal injury the personal representative of such seaman may maintain an
> action for damages at law with the right of trial by jury, and in such action all
> statutes of the United States conferring or regulating the right of action for death
> in the case of railway employees shall be applicable.  Jurisdiction in such actions
> shall be under the court of the district in which the defendant employer resides or
> in which his principal office is located.

41 Stat. 1007 (1920); *accord Chandris, Inc. v. Latsis*, 515 U.S. 347, 377 n.1 (1995) (Stevens, J.,

concurring).  The Jones Act was codified at 46 U.S.C. § 688, and in 1982, Congress expanded

the statute by adding 46 U.S.C. § 688(b).  In 2006, the Jones Act was recodified at 46 U.S.C.

§§ 30104-30106, 30510.  The relevant statute currently reads as follows:

> *A seaman* injured in the course of employment or, if the seaman dies from the
> injury, the personal representative of the seaman may elect to bring a civil action

8

at law, with the right of trial by jury, *against the employer*.  Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

*Id.* § 30104 (emphasis added).

Since the enactment of the Jones Act in 1920, courts have consistently held that a seaman may bring a negligence claim against only his employer, not fellow crewmembers.  *See McAleer v. Smith*, 57 F.3d 109, 116 (1st Cir. 1995) ("Thus, it appears that the general maritime law affords seamen no right to recover for injuries caused by a negligent master or crew member, but that they may recover for such injuries from their employer under the Jones Act."); *Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270, 1283 (1st Cir. 1993) ("[T]he Jones Act provides the exclusive recovery in negligence for claims by seamen against their employers.").  Accordingly, to the extent that the complaint alleges a claim for negligence against any individual defendant under 46 U.S.C. § 30104, those claims must be dismissed.

However, the complaint also alleges a claim for negligence against Kaughman under 46 U.S.C. § 30103.  (Compl. ¶ 24).  That statute currently reads as follows:

> *A person* may bring a civil action *against a master, mate, engineer, or pilot* of a vessel, and recover damages, for personal injury or loss caused by the master's, mate's, engineer's, or pilot's—
>
> (1) negligence or willful misconduct; or
>
> (2) neglect or refusal to obey the laws governing the navigation of vessels.

46 U.S.C. § 30103 (emphasis added).

Originally, Section 30103 was combined with the statute that now appears at 46 U.S.C. § 30102, and the two statutes appeared together at 46 App. U.S.C. § 491.  Before recodification, 46 App. U.S.C. § 491 read as follows:

> § 491.  Liability of master and owners for damage to passengers

> Whenever damage is sustained by *any passenger* or his baggage, from explosion, fire, collision, or other cause, the master and the owner of such vessel, or either of them, and the vessel shall be liable to each and every person so injured, to the full amount of damage if it happens through any neglect or failure to comply with the provisions of title 52 of the Revised Statutes, or through known defects or imperfections of the steaming apparatus or of the hull**;** and *any person* sustaining loss or injury through the carelessness, negligence, or willful misconduct of any master, mate, engineer, or pilot, or his neglect or refusal to obey the laws governing the navigation of such steamers, may sue such master, mate, engineer, or pilot, and recover damages for any such injury caused by any such master, mate, engineer, or pilot.

*Id.* (emphasis added).  Accordingly, before recodification, Section 491 applied to injuries suffered by "passengers"; it was arguably ambiguous as to whether the words "any person" referred to a "passenger" (that is, the potential claimant identified in the first part of the statute) or encompassed a broader class of potential claimants (that is, persons other than "passengers").

In 2006, Section 491 was recodified.  As a result of the recodification, the statute was split into two separate statutes, creating 46 U.S.C. § 30102 from the portion before the semi-colon, and 46 U.S.C. § 30103 from the portion after the semi-colon.  The Jones Act was also recodified to appear at 46 U.S.C. § 30104.  Together, 46 U.S.C. §§ 30102-30104 now read as follows:

§ 30102.  Liability to passengers

(a) Liability.—The owner and master of a vessel, and the vessel, are liable for personal injury *to a passenger* or damage to a passenger's baggage caused by—

(1) a neglect or failure to comply with part B or F of subtitle II of this title; or

(2) a known defect in the steaming apparatus or hull of the vessel.

(b) Not subject to limitation.—A liability imposed under this section is not subject to limitation under chapter 305 of this title.

§ 30103.  Liability of master, mate, engineer, and pilot

*A person* may bring a civil action against a master, mate, engineer, or pilot of a vessel, and recover damages, for personal injury or loss caused by the master's, mate's, engineers, or pilot's—

(1) negligence or willful misconduct; or

(2) neglect or refusal to obey the laws governing the navigation of vessels.

§ 30104.  Personal injury to or death of seamen [Jones Act]

*A seaman* injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer.  Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

46 U.S.C. §§ 30102-30104 (emphasis added).

The issue before the Court is whether 46 U.S.C. § 30103, in its revised form, allows plaintiff, a seaman, to bring a negligence claim against Kaughman, the vessel's captain (that is, master).  Whatever ambiguities may have been presented by the earlier version of the statute, Section 30103 now plainly states that "a person," without limitation, may bring a civil action for negligence against a master.  Since the recodification, at least one other court has addressed the issue of whether a seaman can bring a negligence claim against a vessel's captain.  *See Davila v. Erickson & Jensen Seafood Packers,* 2012 WL 4514666, at *5 (S.D. Tex. Sept. 11, 2012) (memorandum of magistrate judge recommending that district judge decline to dismiss claim for negligence against vessel's captain because 46 U.S.C. § 30103 permits a maritime negligence claim against a "master").

In short, the clear language of Section 30103 now indicates that a "person," injured at sea while aboard a vessel, can bring a claim against the vessel's captain for negligence or willful

11

misconduct.  Defendants have not pointed to any authority since the recodification indicating that seamen—who are obviously "persons"—cannot sue their captains under Section 30103.  And while there may be sound policy reasons to limit the ability of employees to sue their supervisors and co-workers for workplace injuries, that is not an issue for this Court to decide.  The Court must apply the statute as Congress has written it.

The complaint alleges that Kaughman acted negligently by leaving the ship in gear while loading the starboard "drag" onto the deck.  It also alleges that Kaughman's negligence caused, at least in part, the injury to plaintiff's elbow.  Applying the plain language of Section 30103, plaintiff is a "person" who was injured while onboard a vessel by the alleged negligence of Kaughman, the vessel's master or captain.  Accordingly, the complaint appears to state a claim for negligence under Section 30103 against Kaughman.  However, even liberally construed, the complaint does not allege any facts that support a negligence claim against Feltis or Stewart.

Accordingly, to the extent that the complaint asserts negligence claims against Feltis and Stewart, those claims will be dismissed.  However, the motion to dismiss the negligence claims against Kaughman under 46 U.S.C. § 30103 and Nordic Fisheries under 46 U.S.C. § 30104 will be denied.

## 2. <u>Intentional Infliction of Emotional Distress</u>

The complaint asserts a claim for intentional infliction of emotional distress against the individual defendants.  Liberally construed, the complaint's allegations supporting that claim include the alleged death threat by Feltis and the alleged role of Kaughman and Stewart in inciting hostility among the crew against plaintiff.  The complaint does not allege that plaintiff suffered any physical symptoms arising from the alleged emotional distress.

Caselaw concerning claims by seamen in admiralty cases for intentional infliction of emotional distress is sparse, and courts have split over the issue of whether emotional injury alone is sufficient to state a claim.  As one court in this district has noted in considering a seaman's emotional-distress claims:

> In conducting the inquiry, however, the court considers not only maritime cases, but also cases decided under the Federal Employer's Liability Act (FELA).  The Jones Act incorporates the FELA by reference, [46 U.S.C. § 3104], and extends to seamen the same remedies and liability standards afforded to railroad workers under the FELA.  *Ferguson v. Moore-McCormack Lines*, 352 U.S. 521, 523 (1957) ("The standard of liability under the Jones Act is [the same as] that established by Congress under the [FELA].").
>
> As a starting point, the Court derives guidance from the seminal case of *Atchison, Topeka and Santa Fe Railway Co. v. Buell*, 480 U.S. 557 (1987), in which the Supreme Court indicated that under the FELA an individual may under certain circumstances recover for wholly emotional injury:  "Assuming, as we have, that FELA [and Jones Act] jurisprudence gleans guidance from common law developments, whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity . . . .  In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive 'yes' or 'no' answer.  As in other areas of law, broad pronouncements in this area may have to bow to precise application of developing legal principles to the particular facts at hand."  *Id.* at 568, 570.

*Marriott v. Sedco Forex Int'l Res., Ltd.*, 827 F. Supp. 59, 72-73 (D. Mass. 1993); *see also Moody v. Maine Cent. R.R. Co.*, 823 F.2d 693, 694 (1st Cir. 1987) ("We discern from the *Buell* opinion an attempt to leave the door to recovery for wholly emotional injury somewhat ajar but not by any means wide open.").  As the court noted in *Marriott*, several courts since *Buell* have "allowed recovery for wholly emotional injury," while "other courts have rejected specific claims but have reiterated that the FELA allows recovery for wholly emotional injury under certain circumstances."  827 F. Supp. at 73.  At least one court, however, "has held that the FELA does not allow recovery for wholly emotional injury unless the emotional injury results from physical contact or the threat of physical contact."  *Id.* (citation omitted) (noting that "[t]o

13

some extent, the differing outcome of these cases is understandable due to the fact specific nature of the inquiry [under *Buell*]").

Taking into account the preliminary stage of the case, the lack of briefing on the issue, and plaintiff's *pro se* status, the Court is not prepared to hold that "the door to recovery for wholly emotional injury" is closed. *See Moody*, 823 F.2d at 694; *see also Marriott*, 827 F. Supp. at 73 (noting that some courts have, on more complete factual records, "rejected specific claims [while] reiterating that the FELA allows recovery for wholly emotional injury under certain circumstances"). Whether the claim can survive summary judgment remains to be seen.

Assuming at this stage that the complaint may proceed based on allegations of wholly emotional injuries, the Court must also consider whether the complaint's allegations, liberally construed, otherwise plausibly allege a claim for IIED. As the *Marriott* court noted, the Court must look to the elements required under common law for a plaintiff to state a claim for IIED in the admiralty context. 827 F. Supp. at 73 ("Thus, this Court reviews [plaintiff's] emotional distress claims in light of common law jurisprudence and in view of the specific facts underlying his claims.").

To state a claim for intentional infliction of emotional distress under common law in Massachusetts, the complaint must allege:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency[,] and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

*Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976) (citation and internal quotation marks omitted); *accord Brown v. Hearst Corp.*, 54 F.3d 21, 27 (1st Cir. 1995). Courts apply a

"very high" standard to claims of intentional infliction of emotional distress, especially on the
requirement that the conduct in question is extreme and outrageous, beyond all possible bounds
of decency in a civilized community.  *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir.
1996).  For example, liability "cannot be predicated upon mere insults, indignities, threats,
annoyances, petty oppressions, or other trivialities."  *Foley v. Polaroid Corp.*, 400 Mass. 82, 99
(1987).  However, at least some courts have concluded that allegations involving extreme or
outrageous threats, such as death threats, can be sufficient to state a claim for IIED.  *See, e.g.*,
*Soto-Lebron v. Federal Express Corp.*, 538 F.3d 45, 69 & n.25 (1st Cir. 2008) (discussing
remittitur after trial and comparing jury award to case where jury awarded damages for IIED to
plaintiff for, among other things, death threats he received) (citing *Budet-Correa v. United
Parcel Serv.*, 322 F. Supp. 2d 139, 140 (D.P.R. 2004)).

Accepting the complaint's allegations as true, and drawing all reasonable inferences on
behalf of the *pro se* plaintiff, the complaint's allegations are sufficient to state a claim for IIED
against the individual defendants.  Liberally construed, the complaint alleges that Feltis
threatened to kill plaintiff, who was already injured, by throwing him overboard while at sea,
where plaintiff had no protection or other recourse.  The allegations against Kaughman and
Stewart are considerably weaker, but nevertheless appear to be sufficient to state a claim.  Again,
liberally construing the *pro se* complaint, it alleges that Kaughman and Stewart berated plaintiff
for bringing his injury to their attention, incited animosity against him among the remainder of
the crew, and threatened they would not protect him from the crew if he insisted on returning to
port.[1]

---

[1] The Court, of course, is simply describing the allegations; it is making no finding as to whether they are
true, or indeed whether there is evidence to support them.

Accordingly, defendants' motion to dismiss the claims for intentional infliction of emotional distress will be denied.

### 3. **Maintenance and Cure**

The complaint alleges a claim for maintenance and cure. Plaintiff seeks compensation for the medical expenses that he incurred as a result of his injury. Vessel owners are liable for the maintenance and cure of seamen who are injured during their employment. *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 730-32 (1943). "The term 'maintenance and cure' refers to the provision of, or payment for, food and lodging ('maintenance') as well as any necessary health-care expenses ('cure') incurred during the period of recovery from an injury or malady." *LeBlanc v. B.G.T. Corp.*, 992 F.2d 394, 397 (1st Cir. 1993). "As the label implies, the right is curative in nature and is thus to be distinguished from other admiralty rights, such as the right to recover lost wages or the right to recover for a shipowner's negligence, which are compensatory." *Id.* The right to maintenance and cure "attaches largely without regard to fault; a seaman may forfeit his entitlement only by engaging in gross misconduct." *Id.* Once the right has attached, "the injured employee's entitlement continues, even after termination of service, until he is so far cured as possible." *Id.* (internal quotation marks omitted). "This right of the seaman does not rest upon proof of any culpability or legal fault on the part of the owner or master, but arises from the contract of employment." *Muise v. Abbott*, 160 F.2d 590, 592 (1st Cir. 1947); *see also Aguilar*, 318 U.S. at 730 ("[T]his obligation has been recognized consistently as an implied provision in contracts of marine employment."). However, the right to maintenance and cure is available only to a "seaman" who is "in service of the ship" at the time of the injury or onset of the illness. *LeBlanc*, 992 F.2d at 397.

Here, the complaint alleges facts sufficient to state a claim for maintenance and cure

against Nordic Fisheries, plaintiff's employer and the owner of the F/V Expectation.  It alleges that plaintiff was injured while working on the vessel and that he has incurred medical expenses as a result of his injury.  However, maintenance and cure claims can be brought against only a vessel's owner, not against other crew members.  *See Ramirez v. Carolina Dream, Inc.*, 760 F.3d 119, 122 (1st Cir. 2014) ("The owner of a vessel has a duty to pay maintenance and cure . . . .").  Accordingly, to the extent the complaint alleges a claim for maintenance and cure against the individual defendants, the motion to dismiss will be granted, leaving Nordic Fisheries as the sole remaining defendant for that claim.

### 4.     Unseaworthiness

The complaint asserts a claim for unseaworthiness.  "It has long been established under admiralty law that claims for unseaworthiness, Jones Act negligence, and maintenance and cure are separate and distinct causes of action, each with its own unique elements."  *Ferrara v. A.&V. Fishing, Inc.*, 99 F.3d 449, 452 (1st Cir. 1996).  The First Circuit "ha[s] consistently held that liability under the doctrine of unseaworthiness is not dependent upon theories of negligence."  *Id.*  A claim based on unseaworthiness enforces the shipowner's "absolute duty to provide to every member of his crew a vessel and appurtenances reasonably fit for their intended use."  *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 199 (1st Cir. 1980) (internal quotation marks omitted).  "The duty includes maintaining the ship and her equipment in a proper operating condition, and can be breached either by transitory or by permanent defects in the equipment."  *Ferrara*, 99 F.3d at 453.  "A temporary and unforeseeable malfunction or failure of a piece of equipment under proper and expected use is sufficient to establish a claim for unseaworthiness."  *Id.* (internal quotation marks omitted).  Unseaworthiness does not solely apply to equipment, but "may arise from the employment of an unsafe method of work such as the shipowner's failure to

17

provide adequate equipment for the performance of an assigned task or necessary safety equipment." *Vargas v. McNamara*, 608 F.2d 15, 18 (1st Cir. 1979) (finding that a reasonable jury could find unseaworthiness when a seaman was required to use a cleaning spray that exposed the seaman to toxic fumes).

To state a claim for unseaworthiness, a seaman must allege "that the unseaworthy condition was the sole or proximate cause of the injury sustained." *Ferrara*, 99 F.3d at 453. "Although the duty is absolute, the standard is not perfection, but reasonable fitness; not a ship that will weather every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Id.* (internal quotation marks and alterations omitted).  The First Circuit has emphasized that "[m]ost important to this discussion is that a claim for unseaworthiness is not dependent upon a finding of negligence.  The reason, of course, is that unseaworthiness is a *condition*, and how that condition came into being—whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it." *Id.* (internal quotation marks omitted).

Liberally construed, the complaint alleges that the vessel did not have proper safety features in place, or that defendants improperly modified existing safety features, rendering the ship unseaworthy.  (Compl. ¶¶ 10-11).  At this stage, those allegations are sufficient to state a claim for unseaworthiness against Nordic Fisheries.  However, like maintenance and cure, a claim for unseaworthiness can be brought against only the vessel's owner.  Accordingly, to the extent that the complaint alleges a claim for unseaworthiness against the individual defendants, the motion to dismiss will be granted, leaving Nordic Fisheries as the sole defendant for the unseaworthiness claim.

C.     <u>Lack of *In Rem* Jurisdiction over the Vessel</u>

The complaint asserts a claim against the F/V Expectation as an *in rem* defendant. Defendants contend that the Court does not have *in rem* jurisdiction over the F/V Expectation because plaintiff has not taken any steps to arrest the vessel.  In order to initiate an *in rem* proceeding, "a valid seizure [or arrest] of the *res* is [necessary]."  *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 84 (1992).  Where the *res* has not been arrested, the court does not have jurisdiction and "no decree *in rem* can be rendered against the *res*."  *Alyeska Pipeline Serv. Co. v. Vessel Bay Ridge*, 703 F.2d 381, 384 (9th Cir. 1983), *abrogated on other grounds by Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852 (9th Cir. 2005); *see also United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1113 (5th Cir. 1992) ("No *in rem* suit can be maintained without a valid arrest of the *res* by the marshal.").

Plaintiff has not taken any steps to arrest the F/V Expectation.  Because there has not been a valid seizure of the vessel, the Court does not have *in rem* jurisdiction over it.  Therefore, defendants' motion to dismiss the F/V Expectation as an *in rem* defendant is granted.

IV.     <u>Conclusion</u>

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part, as indicated below.

1.  Defendants' motion to dismiss for insufficient service of process is DENIED.

2.  Defendants' motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part, as follows:

    a.  Defendants' motion to dismiss plaintiff's claim for negligence is GRANTED as to Stewart and Feltis, and otherwise DENIED.  The remaining defendants as to this claim are Nordic Fisheries and Kaughman.

19

    b.   Defendants' motion to dismiss plaintiff's claims against the individual defendants for intentional infliction of emotional distress is DENIED.

    c.   Defendants' motion to dismiss plaintiff's claim for maintenance and cure is GRANTED as to the individual defendants, and otherwise DENIED.  The remaining defendant as to this claim is Nordic Fisheries.

    d.   Defendants' motion to dismiss plaintiff's claim for unseaworthiness is GRANTED as to the individual defendants, and otherwise DENIED.  The remaining defendant as to this claim is Nordic Fisheries.

3.   Defendants' motion to dismiss claims against the F/V Expectation for lack of *in rem* jurisdiction is GRANTED.

**So Ordered.**


/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated:  September 2, 2016             United States District Judge